# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| A.T. INDIVIDUALLY and as PARENT AND NATURAL GUARDIAN OF O.T., a minor | : CIVIL ACTION :  |
| v. | : NO. 17-4983 : |
| OLEY VALLEY SCHOOL DISTRICT | : : |

## MEMORANDUM

**SCHMEHL, J.   /s/ JLS**                                                                           **NOVEMBER 8, 2019**

Plaintiffs brought this action under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, et seq.,(Count One) and  § 504 of the Rehabilitation Act, 29 U.S.C. § 701, and the Americans with Disabilities Act, 42 U.S.C.§ 12132 (Count Two), claiming the Defendant allowed Plaintiff O.T. to be bullied, harassed and intimidated while she was a high school student under the Defendant's care and control. Plaintiffs allege that a result of the bullying, Plaintiff O.T. suffered, *inter alia*, severe psychological injuries.

On September 26, 2019, Plaintiff O.T. appeared at defense counsel's law office with her lead counsel, Gregory A. Smith, Esq., for a mental examination. Defense counsel had arranged for Julie A. Kessel. M.D. to travel from Florida to conduct the examination of O.T. Defense counsel did not appear at the examination because she was attending depositions in another matter. Mr. Smith sat in on the mental examination of O.T. The examination was transcribed by a court reporter via telephone. Mr. Smith limited the examination to three hours.

1

E-mail exchanges between Mr. Smith and defense counsel reveal that defense counsel was aware as of September 25, 2019, that Mr. Smith would be sitting in on the mental examination of his client and that defense counsel expressly consented as follows**:**

> I'm very accustomed to having someone's paralegal sit in and take notes. It is very odd in my experience that a law firm partner would sit in, but that's ok. Please advise me ahead of time who else will be there.

(Letter to the Court from Gregory Smith dated October 23, 2019, p.2.)

In addition, the transcript of the examination reveals that defense counsel, through her paralegal, stated that that she did not object to having a stenographer transcribe the examination as long as Dr. Kessel did not object. (Tr. 18.) Dr. Kessel did not have any objection. (Tr. 14.) There is no evidence that defense counsel objected to the 3-hour time limit at any time prior to the examination.

Defense counsel now objects to Plaintiff's counsel having sat in on the examination and "obstruct[ing] the process in every way imaginable", the fact that the examination was transcribed and that Plaintiff's counsel unilaterally imposed a three-hour time limit on the examination. Defense counsel seeks sanctions against the Plaintiffs in the form of dismissal of their damages claims as they relate to psychiatric, psychological or emotional distress or, in the alternative, for a new mental examination to be conducted by Dr. Kessel within 30 days, with exam being limited to one day and without the presence of counsel and without recording of any kind.

Plaintiff's counsel argues that defense counsel has waived any objections, but has offered to have O.T. appear to continue the mental examination at the defense's

costs with Plaintiff's counsel attending the examination and the examination being transcribed.

While the record does not reflect that Mr. Smith "obstructed the process in every way imaginable," it does reflect that Mr. Smith interrupted the examination on multiple occasions as follows:

> Mr. Smith: If there . . .if there are areas in which I believe I need to interject, I will do so.
>
> Dr. Kessel: Okay.
>
> Mr. Smith: Other than that, I—it's not my intention to be disruptive in any way.
>
> Dr. Kessel: Okay. Thank you.
>
> And I understand anew that we have a time limit, until 1 o'clock?

(Tr. 6-7.)

> Mr. Smith: We've gone for an hour and a half—let's take a break.

(Tr. 93.)

> Dr. Kessel (to O.T.): So—I'm trying to understand if you see the----sex itself as a trauma.
>
> O.T. Yeah, I—I—
>
> Dr. Kessel (to O.T.): Or the bullying as a trauma or both or how the –you know, the –how are the two situations, how do they line up in your head? Where is – where is the trauma?
>
> O.T. Okay. Um.
>
> Mr. Smith: Well, she said "both,"
>
> Dr. Kessel: If you don't mind.

**3**

> Mr. Smith: No, I do mind. She said "both." Now you're trying to change her answer to—
>
> Dr. Kessel: No, I'm trying to clari—clarify her answer.
>
> Mr. Smith That's a funny way of clarification.

(Tr. 98-99.)

> Mr. Smith: Pardon me, how much degree are we going to do with the minor child. . .how much are you going to get into the minor child's potential emotional issues because I think that's probably far afield.
>
> Dr. Kessel: I think what I'm doing is relative to what I do.
>
> Mr. Smith: I don't care what you think. Um, but what I'm saying to you is that if you're asking her about some potential protected health information over which I have no control because I don't represent him. I think that is beyond the scope of what we are permitted to do here today.
>
> Dr. Kessel: I guess you could advise her not to-- answer, but this is all within the scope of a normal, uh, psychiatric evaluation.
>
> Mr. Smith: This is not a normal psychiatric--psychiatric evaluation, so I've—I've—I've explained the concerns.
>
> Dr. Kessel (to O.T.): So your brother was also diagnosed as having a mood disorder?
>
> Mr. Smith: So let's be efficient about this. I'm not going to let her answer any more questions about her brother's alleged mood disorder. So you don't have to keep up asking the questions---or to keep asking the questions, just not—uh, instruct her not to answer.

4

(Tr. 161-163.)

    Dr. Kessel (to O.T.): What made you decide on the evening that you had sex with, um, Ryan, what made you decide to have sex with him that evening, do you think?

    Mr. Smith: Um, she was raped. You're saying "sex."

    Dr. Kessel: Okay, um.

    Mr. Smith: She was raped. She was –

    Dr. Kessel: That - - -that is----

    Mr. Smith –18 years old, she was under the age of consent. She cannot----she was---

    Dr. Kessel: That---that's fine.

    Dr. Kessel (to O.T.): However, there is some documentation that you offered some comments to police and - -others.

    Do you recall what your thoughts were that evening?

    Mr. Smith: Comments?

    Dr. Kessel: I'm--I'm sorry?

    Mr. Smith: I'm just trying to go through your forethought process.

(Tr. 167-168.)

    Mr. Smith: It's 1 o'clock.

    Dr. Kessel: It's 1 o'clock?

    Mr. Smith: Actually, its 1:01.

> Dr. Kessell: Okay. Thank you for talking with me during this time.
> I----I do want to say that, um. I would have preferred to have more time available for the interview because in my mind, it's---would have been better, um, opportunity to get to know you and your experience and symptoms better if I had more time, and I planned on having more time.
>
> Mr. Smith: Well, you had seven or eight hours of deposition transcript to read through as well, during which, I understand, many, many, many of your questions were addressed, So there we are.

(Tr. 169.)

Federal Rule of Civil Procedure 35(a) governs physical or mental examinations of parties. It provides that "[t]he court where the action is pending may order a party whose mental or physical condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). That order "must specify the time, place, manner, conditions and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B).

The Rule does not set forth any parameters for the presence of third parties or for the recording of the examination. Nor has our Court of Appeals weighed in on the issue. However, the "majority rule" in federal courts is to exclude outside observers from Rule 35 examinations. *See, e.g, Smolko v. Unimark Lowboy Trans., LLC.,* 327 F.R.D. 59, 61-62 (M.D. Pa. 2018)(physical examination); *Cato v. Township of Andover*, 2018 WL 1639692, at *3 (D. N.J. April 5, 2018); *R.D. v. Shohola Camp Ground & Resort*, 2017 WL 1036475, at *2 (M.D. Pa. Mar. 17, 2017); *McKisset v. Brentwood BWI One LLC,* Civ. No. WDQ-14-1159, 2015 WL 8041386, at *2 (D. Md. Dec. 4, 2015); *King v. Mansfield Univ. of Pa.*, Civ. No. 11-1112, 2014 WL 563323, at *3 (M.D. Pa. Feb. 11,

2014); *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, 513–14 (E.D. Cal. 2011); *Calderon v. Reederei Claus–Peter Offen GmbH & Co.*, 258 F.R.D. 523, 526 (S.D. Fla. 2009). Only special circumstances, if they exist, and "good cause" can create an exception. *Cato, supra.*

In *Cato*, the United States District Court for the District of New Jersey refused to allow the presence of a third-party nurse observer at a Rule 35 mental examination, reasoning that "[a]n objection to the manner in which the defense medical expert is conducting the examination would significantly undermine any rapport between the medical expert and the plaintiff being examined, impairing its integrity." *Id.* at *4. The Court in *Cato* further noted that "[a]n important focus of setting conditions for the Rule 35 examination is to promote the examination's objectivity and reliability." *Id.*, citing *Shirsat v. Mutual Pharm Co.*, 168 F.R.D. 68, 71 (E.D. Pa. 1996). The District Court observed that other safeguards existed for ensuring that the Rule 35 examination is conducted fairly, including the personal knowledge of the examination that plaintiff can share with her counsel, the fact that under Rule 35(b), the expert is required to provide plaintiff's counsel with a copy of a detailed report containing the expert's findings, diagnoses and conclusions to which the expert will be subject to cross-examination and that plaintiff may submit contrary medical expert evidence**.**

Under the majority rule in federal courts, Plaintiff's counsel should not have attended the Rule 35 mental examination of his client. As the transcript makes clear, Plaintiff's counsel did not merely passively observe the examination, but instead treated the mental examination as a deposition by interrupting the examination on multiple occasions. The transcript reveals that during these interruptions, Plaintiff's counsel often

engaged with Dr. Kessel in an antagonistic manner. This is precisely the type of adversarial conduct that the majority rule seeks to avoid by prohibiting third-party observers in the examination. And when the third-party observer is Plaintiff's counsel, the potential for the examination being tainted increases even more. Had he not attended the examination of his client, Plaintiff's counsel still would have had available to him all the safeguards enunciated by the Court in *Cato*, *supra*. Nor has Plaintiff's counsel set forth any special circumstances or good cause that would create an exception to the majority rule.

On the other hand, defense counsel did not formally object to Plaintiff's counsel being present during the examination, the length of the examination or having the examination transcribed. Plaintiff's counsel offered to suspend the examination and allow defense counsel to file a motion with the Court. (Tr. 14.) Defense counsel did not object until after the examination was completed.

Under these circumstances, the Court believes the most equitable solution is for Plaintiff to reappear within 30 days for a new Rule 35 mental examination with Dr. Kessel. Plaintiff will be permitted to have a chaperone accompany her to the examination, but the chaperone shall not be an attorney. The chaperone will not be permitted in the exam room during the examination, but can remain in a nearby room. The examination shall be limited to no more than 4 hours. Plaintiff O.T. is permitted to ask for a break at any time during which she may speak to the chaperone. The examination shall not be recorded or transcribed in any manner. Plaintiff's counsel and defense counsel shall split the costs incurred for rescheduling of the mental examination, including Dr. Kessel's expenses.

An appropriate Order follows.