UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| A.T., INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF O.T., A MINOR,<br>　　　　Plaintiffs<br><br>v.<br><br>OLEY VALLEY SCHOOL DISTRICT,<br><br>　　　　Defendants. | NO. 5:17-cv-04983-JLS<br><br>JURY TRIAL DEMANDED<br><br>(*Electronically Filed*) |

DEFENDANT'S SUPPLEMENTAL MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT ON DAMAGES PER THE COURT'S
ORDER OF OCTOBER 14, 2022

Respectfully submitted,

**MARSHALL DENNEHEY**

By: *s/Sharon M. O' Donnell*
　　Sharon M. O'Donnell
　　Pennsylvania Bar I.D. No.: 79457
　　100 Corporate Center Drive, Suite 201
　　Camp Hill, PA 17011
　　Ph: (717) 651-3500
　　Fax: (717) 651-3707
　　Email: SMODonnell@mdwcg.com
　　*Attorneys for Defendant, Oley Valley School District*

The Defendant, Oley Valley School District, sets forth below its argument in support of its Motion for Summary Judgment on Damages.

## I. NATURE OF INJURIES AND DAMAGES ALLEGED UNDER (COUNT I) TITLE IX SECTION 504 OF THE REHABILITATION ACT

O.T. is now an adult. In this case, she brought emotional distress claims against the Defendant School District which appear to stem from a sexual contact with the brother of a friend that occurred on November 7, 2015, which she has characterized as a statutory rape when she was 15 years old. She claims that public knowledge of the rape caused her to be ostracized by her friend group who stopped speaking to her after hearing that she said she had sex with one of their 25-year old brothers on the night of a party. (Regarding the rape, she testified: "it hurt – but he wasn't violent.... I couldn't tell him I was a virgin.") (Dep., O.T., pp. 194-198) [DOC. 96 Ex. A].

She testified that she was suing the Oley Valley School District because "they failed to prevent the bullying... not even prevent, but protect me ... after they were aware... of what happened to me...related to the ...methods that the girls were bullying me. I feel as though I needed help. I needed emotional support in school. And I feel like they lied to me often, and about things that really, really, really hurt me in the long run... and caused like major, detrimental harm to the way I feel about myself. Id. (Dep., O.T., p. 39). And again, O.T. explained her health in December of 2015... "my mental health was so poor..." (Id. at 249.) She further explained that "when this stuff happens... it's not like you get bullied for a week, and then you just forget about the bullying that happened and it still doesn't affect .. for me, my emotional and mental health." (Dep., O.T. at 255, 256.) "These people said really

2

hurtful things to me about something that happened in my private life that I chose to make public.... These girls, they talked and laughed about it... some people thought it was cool, like a good thing...and I knew about that... and I would pass those people in the hallway, that I used to hang out with, and they wouldn't look at me.... no, they didn't punch me, but they might as well have, because it impacted me the same way." (Id. at 257.)

When O.T. chose to attend on-line classes from home in January of 2016, she described the failing situation as follows: "... that was just not the way I learn. But especially with my like building... and worsening... mental illness, like plus all of like the emotional turmoil I was going through, I could think of nothing worse for me." (Id. at 276.)

O.T. explained her health prior to the starting game of the 2016 field hockey season... "I was not emotionally or mentally well...." (Id. at 102.) She explained that later in [September 2016 when she appeared under the influence at the Oley Valley Fair, (which led to considerations of suspension or expulsion from her field hockey team and perhaps from school,) she said, "... I never would have done that [getting drunk, taking pills and going to the Fair] had I not been going through everything that I had been going through. I wanted to explain to them that, I had an IEP for emotional support, and like for my emotional and mental disability, and for the emotional and mental disability that surfaced because of the bullying. ... And because of my mental health and my disability and my state of mind, I started to take medication that was prescribed to me and take alcohol at my own home and then walk into a public place...." (Id. at 48.)

O.T.'s nurse expert, Kathleen Corrigan, reports O.T.'s mental and emotional history as follows: "On 11/16/15, O.T. was admitted to the E.R. at Lehigh Valley Hospital after ingesting a bottle of Tylenol... and remained distressed and distracted through a partial hospitalization at Transitions; on 1/18/2016, O.T. was again admitted to Lehigh Valley

3

Hospital with a diagnosis of Bipolar Disorder; following her discharge, attended the Pyramid program; thereafter, she attended Progressions, an educational program for students with mental health issues. On 9/18/16, O.T. again admitted to Lehigh Valley Hospital, and thereafter to Brooke Glen Behavioral Hospital on 9/24/16. On 7/15/18, O.T. began services under Dr. Nicole Bruno for psychological and emotional symptomology. She was admitted to Belmont Behavioral Hospital for detoxification on 11/13/18 and on 1/18/19 was admitted to Retreat Behavioral Health for a month long sub-acute alcohol rehabilitation program. On 2/25/19, she was living at the "Good Works" recovery house. On 3/5/19, she was admitted to Lancaster General Hospital for repair of a self-inflicted wound on her right calf, and thereafter was referred for a 302 commitment by the ER physicians. She attended Lancaster Behavioral Health until 3/11/19 and thereafter attended Behavioral Wellness and Recovery for a 42-day stay where she received psychology therapy. After that, she was admitted to Brandywine Behavioral Health as the result of having jumped out of a second story window without suicidal ideation. In June of 2019, she began receiving outpatient Dialectical Behavioral Therapy and continued with that, and attending AA meetings.[1]

II. **O.T.'S EMOTIONAL DISTRESS DAMAGES ARE NOT RECOVERABLE UNDER TITLE IX AND SECTION 504 OF TH REHABILITATION ACT, PURSUANT TO THE U.S. SUPREME COURT'S HOLDING IN *CUMMINGS V. PREMIER REHABILITATION KELLER, LLC*, ____ U.S. ____, 142 S. Ct. 1562, ___L.Ed.2d___, (2022).**

On April 28, 2022, the U.S. Supreme Court addressed the issue of whether or not a federal funding recipient under Spending Clause legislation, i.e., Title VI, Title IX, Section

---

[1] See, attached report of Corrigan.

504 of the Rehabilitation Act and the Affordable Care Act[2], should expect to be sued for emotional distress damages in a private action by third parties.[3] The *Cummings* Court said "no.[4]" Reasoning that its prior holding in *Barnes v. Gorman, 536 U.S. 181 (2002),* forbids the opposite result, the *Cummings* Court observed that *Barnes* focused on the terms of the Spending Clause contracts between the Government and the recipients of the federal dollars: where those terms do not include explicit notice of a potential for civil action far in excess of the funds received, it is simply unfair to allow emotional distress damages to be included in a private third party action against a recipient.

Amici Curiae the Chamber of Commerce of the United States of America, the American Property & Casualty Insurance Association and the National Federation of Independent Business filed a Brief for the *Cummings* Court's consideration in support of the Respondent, Premier Rehabilitation Keller, LLC, which pointed out that "*Barnes* 'acknowledged that compensatory damages alone 'might well exceed a recipient's level of federal funding.'" *See, Brief of Amici Curiae the Chamber of Commerce of the United States, et al., 2021 WL 4731337.* Amici further observed that 'emotional distress damages could well pose an existential threat to certain funding recipients for violation of a Spending Clause antidiscrimination provision", citing *Fitzgibbons v. Integrated Healthcare Holdings, Inc., No. G048413, 23-26, 33 (Ct. App. Cal. Apr. 30, 2015) unpublished, (reversing a district*

---

[2] "Pursuant to its authority to 'fix the terms on which it shall disburse federal money', *Pennhurst, 451 U.S. at 17, 101 S.Ct. 153,* Congress has enacted four statutes prohibiting recipients of federal financial assistance from discriminating based on certain protected grounds [statutes citations omitted]… None of these statutes expressly provides victims of discrimination in a private right of action to sue the funding recipient in federal court, citing *Cannon v. Univ. of Chicago, 441 U.S. 677 (finding implied right of action to sue under Title VI and Title IX, later amended by statute; as to the Rehabilitation Act and the Affordable Care Act –the two statutes directly at issue **in this litigation** – each expressly incorporates the rights and remedies provided under Title VI. 29 U.S.C. §794a(a)(2); 42 U.S.C. §18116(a)."* 142 S. Ct. at *1569
[3] 142 S.Ct. at *1571.
[4] Id., *1571 (…Under *Barnes,* we therefore cannot treat federal funding recipients as having consented to be subject to damages for emotional distress. It follows that such damages are not recoverable under the Spending Clause statues we consider here.)

*court judgment and reinstating jury's $5.2 million award for emotional distress damages); Rael v. Sybron Dental Specialties, No. 292599, 2021 WL 631463 at \*1 (Cal.Ct.App. Feb. 18, 2021) (reversing on appeal only for evidentiary error in liability phase underlying $3 million emotional distress damages award); Jackson Lewis PC, Former Winery Employees Awarded $11 Million, LEXOLOGY (Feb. 14, 2019), https://bit.ly/3A0x6vVq (reporting $2.5 million emotional distress damages award in Meadowcroft v. Silerton Partners, Inc., No. BC 633239 (L.AS. Cnty.Sup.Ct. 2019)); Anderson v. American Airlines, 352 F.App'x 182, 183 (9th Cir. 2009), aff'g district court's denial of a remitter of $1 million award for emotional distress damages from termination based on perceived mental disability); Tobin v. Liberty Mutual Insurance Co., 553 F.3d 121 (1ˢᵗ Cir. 2009), aff'g award of $500,000 in emotional distress damages for failure to accommodate); Jenkins v. Southeastern Michigan Chapter, American Red Cross, 141 Mich.App. 785 799 (1985) (affirming $500,000 non-economic damages award for discriminatory constructive discharge); Moussa v. Pennsylvania Department of Public Welfare, 289 F.Supp.2d 639 (W.D. Pa 2003), aff'd award for national origin discrimination at statutory cap of $300,000 where jury awarded $750,000, Resp. Br. 39 (collecting cases.)"* [5]

Amici posits, "that funding recipients, at least the smaller ones, would knowingly take on such risks is, to say the least, questionable." *Id* at \*20-21.

Explaining its choice to adopt contract analogy to the reasoning underlying its holding, the *Cummings* majority states, that "…we employ the contract analogy 'only as a potential limitation on liability' compared to that which 'would exist under non-spending statutes.'"

---

[5] Plaintiff's Pretrial Memorandum at [DOC. 121] reflects "damages" for expenses related to her emotional distress, bipolar disorder, anxiety, embarrassment, frustration and alcohol and drug addiction ranging between $500,000 to over $10,000,000.

We do so to ensure that funding recipients 'exercised their choice' to take federal dollars 'knowingly, cognizant of the consequences' of doing so. *Id., citing, Pennhurst, 451 U.S. at 17, 101 S. Ct. 1531.* The Majority continues, "Here, the statutes at issue say nothing about what those consequences will be. Nonetheless, consistent with *Barnes,* it is fair to consider recipients' awareness that, if they violate their promise to the Government, they will be subject to either damages or a court order to perform. Those are the usual forms of relief for breaching a legally enforceable commitment. No dive through the treatises, 50-state survey, or speculative drawing of analogies is required to anticipate their availability." *Id at *1573.*

Concurring justices Kavanaugh and Gorsuch confirmed the majority holding applicable to **ALL** spending clause statutes, stating, "the employment of a contract analogy to analyze the availability of emotional distress damages under the implied right of action under Title VI is imperfect… rather, Congress, not this Court, should extend implied causes of action and expand available remedies. *Id. at *1577 (citations omitted).*

Dissenting justices Breyer, Sotomayer and Kagan begin their disagreement with the majority's holding, with this observation: "Using its Spending Clause authority, Congress has enacted four statutes that prohibit recipients of federal funds from discriminating on the basis of certain protected characteristics, including (depending upon the statute) race, color, national origin, sex, disability, or age. *See, Title VI, 42 U.S.C. §2000d; Education Amendments Act of 1972, Title IX, 20 U.S.C. §1681; Rehabilitation Act of 1973, §504, 29 U.S.C. §794; Patient Protection and Affordable Care Act (ACA), §1557, 42 U.S.C. §18116.* We have held that victims of intentional violations of these statutes may bring lawsuits to recover, among other relief, compensatory damages. *Franklin v. Gwinnett County Public Schools, 503 U.S. 60 (1992).* Today, the Court holds that the compensatory damages

7

available under these statutes cannot include compensation for emotional suffering. *Id. at *1578.*

Furthermore, the Dissenting justices state, "[I] begin with agreement. First, like the Court, I recognize that 'it is 'beyond dispute that private individuals may sue to enforce' the [four] antidiscrimination statutes we consider here." *Ante*, at ____, quoting *Barnes v. Gorman, 536 U.S. at 185).* Title VI prohibiting race discrimination) and Title XI (prohibiting sex discrimination) contain implied rights of action that have been ratified by Congress. ... Thus, the Court's decision today will affect the remedies available under all four of these statutes, impacting victims of race, sex, disability and age discrimination alike." *Id. at *1578.*

One thing all of the justices in *Cummings* agreed about was the list of Spending Clause statutes under review. Subsequent to the *Cummings* holding, various district courts around the nation have adhered, as they must, to that holding under these four statutes. *See, Doe, et al. v. Board of Regents of the Univ. of Nebraska, 2022 WL 3566990 (Doe concedes that the holding in Cummings generally precludes emotional distress damages (for post-traumatic stress disorder and depression) in Title IX cases like hers;) J.P., et al., vs. State of Nebraska, et al., 2022 WL 5254121 (dismissing claims for emotional distress damages under ADA and Section 504 of the Rehabilitation Act); J.C. v. Board of Regents of the University System of the State of Georgia, 2022 WL 4331768 (the Supreme Court held that emotional distress damages were not available under the Spending Clause statutes, including Title IX), citing, Cummings at *1576; Bonnewitz v. Baylor University, 2022 WL 2688399 (On April 28, 2022, the U.S. Supreme Court barred the recovery of emotional distress damages under anti-discrimination legislation such as Title IX; in response, Plaintiff concedes that emotional distress damages are not available); Id. at *4; Doe v. City of Pawtucket, 2022 WL 4551953*

*(this Court sees no other option but to conclude that emotional distress damages are not available under Title IX), citing, Bonnewitz, supra; Doe v. Curators of Univ. of Missouri, 2022 U.S. Dist. LEXIS 145, 147 at \*3-4, \*6; and, <u>criticizing</u> Doe v. Purdue, 2022 U.S. Dist. LEXIS 128601 (finding against applicability of Cummings to Title IX claim, "Doe" opinion has little persuasive value and goes against the thrust of the Cummings holding); Hejmej v. Peconic Bay Medical Center, 2022 WL 5429675 (holding that Cummings applies to the case at bar and dismisses in their entirety ADA and Rehabilitation Act claims); Doe v. Curators of Univ. of Missouri, supra, (plaintiff concedes that Cummings bars recovery of emotional distress damages under Title IX; this Court holds that Cummings applies to Plaintiff's Title IX claims, granting summary judgment to Defendant).*

Clearly, the majority, of the courts whom have properly analyzed *Cummings* under a Spending Clause analysis have either elicited concession from Plaintiff's counsel or found directly that the holding applies to both Title IX and Section 504 claims, such as those set forth in this litigation. And in this case, on the record at oral argument[6], Plaintiff's counsel conceded the application of *Cummings* to Plaintiff's 504 claim, but did not concede its applicability to Title IX.

There is no unambiguous way to differentiate the *Cummings* holding from a Title IX claim inasmuch as even the *dissenting justices* in *Cummings* understood that the Spending Clause statues, of which there are four, were under consideration for a decision. And while the dissenting justices clearly disagreed with the result, they did not disagree with the fact that the Spending Clause legislative statutes were under review – and that those statutes include Title IX. Because even the dissenting justices comprehended and agreed that Title IX and

---

[6] October 13, 2022 [DOC. 138]

Section 504 of the Rehabilitation were affected by the Court's holding in *Cummings,* as well as the eight (8) or so district courts whom have applied *Cummings* to the Title IX and Section 504 claims before them, so too should this Court in rendering a decision in favor of the Defendant, Oley Valley School District. Plaintiff's claims in this case are precisely the type of claims for which the *Cummings* court intended to limit liability under the Spending Clause statutes including Title IX and Section 504 of the Rehabilitation Act.

### III. CONCLUSION

For all of the foregoing reasons, the Defendant, Oley Valley School District, respectfully requests this Court to enter an Order granting summary judgment on damages and dismissing the entirety of Plaintiff's claims with prejudice based upon the holding of *Cummings v. Premier Rehabilitation Keller, LLC, supra.*

        Respectfully submitted,

        **MARSHALL DENNEHEY**

By:    *s/Sharon M. O' Donnell*
        Sharon M. O'Donnell
        Pennsylvania Bar I.D. No.: 79457
        100 Corporate Center Drive, Suite 201
        Camp Hill, PA 17011
        Ph: (717) 651-3500 Fax: (717) 651-3707
        Email: SMODonnell@mdwcg.com
        *Attorneys for Defendant, Oley Valley School District*

## CERTIFICATE OF SERVICE

I, Sharon M. O'Donnell, Esquire, of Marshall Dennehey Warner Coleman & Goggin, do hereby certify that on this 27th day of October, 2022, I served a copy of the foregoing document, via ECF, email and/or first class U.S. mail, as follows:

*Counsel for Plaintiffs:*
Gregory A. Smith, Esquire
Shannon B. Stewart, Esquire
Smith Mirabella Blake
100 N. 20th Street, Suite 303
Philadelphia, PA 19103
Email: gsmith@smblawfirm.com

David G.C. Arnold, Esquire
Robson & Robson, P.C.
2200 Renaissance Boulevard, Suite 270
King of Prussia, PA 19406
Email: davidgcarnold@aol.com

**MARSHALL DENNEHEY**
*Attorneys for Defendant, Oley Valley School District*

BY: *s/Sharon M. O'Donnell*
SHARON M. O'DONNELL, ESQ.
Pennsylvania Attorney I.D. No.: 79457
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
Ph: (717) 651-3503
Fax: (717) 651-3707
Email: smodonnell@mdwcg.com